# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| HELLAS CONSTRUCTION, INC., | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. A-19-CV-00377-LY |
| | § | |
| BEYNON SPORTS SURFACES, INC., AND | § | |
| JEFFREY DIXON, | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
   UNITED STATES DISTRICT JUDGE

Before this Court are Plaintiff's Motion to Remand, filed on May 3, 2019 (Dkt. No. 7); Beynon Sports Surfaces, Inc.'s Response, filed on May 10, 2019 (Dkt No. 9); and Plaintiff's Reply, filed on May 17, 2019 (Dkt. No. 12). On July 18, 2019, the District Court referred the above motion and related filings to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.   BACKGROUND

Plaintiff Hellas Construction, Inc. ("Hellas"), a Texas corporation based in Austin, Texas, specializes in the design and installation of sports surfaces and athletic facilities. Defendant Beynon Sports Services, Inc. ("Beynon"), a Maryland corporation, is in the same business as Hellas and is thus a competitor of Hellas. Defendant Jeffrey Dixon ("Dixon"), a Texas resident, entered into an employment agreement with Beynon (the "Beynon Agreement") in January 2016. Dkt. No. 2-4 at ¶ 7. Dixon worked for Beynon for three years and was responsible for

"management oversight for all phases of the construction project . . . in connection with track surfacing in the states of Texas, Oklahoma, Kansas, Louisiana, Alabama, Mississippi, Florida, Georgia, Nebraska, Arkansas and Missouri (the 'Restricted Territory')." *Id.* at ¶ 11.

On February 21, 2019, Dixon resigned his employment with Beynon and signed an employment contract with Hellas (the "Hellas Agreement"). *Id.* at ¶ 9. Hellas alleges that Beynon has sent notices to Dixon that "put into question whether Dixon is (or will be) in violation of the Beynon Agreement due to his employment with Hellas." *Id.* at ¶ 10.

On February 25, 2019, Hellas filed this lawsuit in state court against Beynon and Dixon. *See Hellas v. Beynon*, D-1-GN-19-000999 (261st Dist. Ct., Travis County, Tex. Feb. 25, 2019). Hellas' lawsuit seeks a declaratory judgment under Chapter 37.004 of the Uniform Declaratory Judgment Act "as to whether Dixon may comply with the Hellas Agreement without violating the terms of the Beynon Agreement, and whether Dixon may perform any services requested by Hellas in states that are not within the Restricted Territory." Dkt. No. 2-4 at ¶ 15. Hellas contends that "[i]f Dixon's duties with Hellas are in violation of the Beynon Agreement, Dixon will be unable to fulfill his duties and comply with the Hellas Agreement, and will be in breach of the Hellas Agreement." *Id.* at ¶ 12. Hellas seeks attorneys' fees and costs.

On April 3, 2019, Beynon removed this lawsuit to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Beynon argues that Hellas has improperly joined Dixon as a defendant in this case for the purpose of destroying diversity jurisdiction. In response, Hellas filed the instant Motion to Remand.

## II. LEGAL STANDARDS

"Under 28 U.S.C. § 1441(a), any state court civil action over which the federal courts would have original jurisdiction may be removed from state to federal court." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). A case may be removed pursuant to

28 U.S.C. § 1332 if there is complete diversity of citizenship and the amount in controversy is greater than $75,000 exclusive of interests and costs. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If a party is improperly joined, a court may disregard the party's citizenship for purposes of determining subject matter jurisdiction. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc)).

On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* To determine whether jurisdiction is present for removal, courts consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

### III.  ANALYSIS

Hellas argues that this case should be remanded to state court because (1) there is not complete diversity of citizenship, and (2) Beynon has not established that the amount in controversy exceeds $75,000. Beynon argues that Hellas has improperly joined Dixon as a defendant in this case for the sole purpose of destroying diversity jurisdiction. Accordingly, Beynon argues that the Court should ignore Dixon's citizenship in this case and dismiss him from this lawsuit, or in the alternative to realign him as a plaintiff in the case. Beynon also argues that it has established the required minimum amount in controversy in this case.

### A.  Diversity Jurisdiction and Improper Joinder

"[A] district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined." *Smallwood*,

385 F.3d at 572 (emphasis omitted) (citing 28 U.S.C. § 1359). Improper joinder can be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). Only the second factor is at issue in this case, and the applicable test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573.

To determine whether a plaintiff has a reasonable basis of recover under state law, courts "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* In most cases, "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* A court may find that in some cases, "hopefully few in number, . . . a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*

The burden of persuasion on those who claim improper joinder is a heavy one. *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016). Accordingly, courts view "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Travis*, 326 F.3d at 765.

Because Beynon is not arguing "actual fraud in the pleadings" in this case, to show improper joinder in this case, Beynon must demonstrate "that there is no possibility of recovery" by Hellas

against Dixon. *Smallwood,* 385 F.3d at 568. The Court must first review the allegations in the Petition to see if Hellas has alleged sufficient facts to state a plausible claim for relief against Dixon. *See Cumpian v. Alcoa World Alumina, LLC*, 910 F.3d 216, 220 (5th Cir. 2018).

Hellas' lawsuit alleges one claim against Dixon under the Texas Declaratory Judgment Act ("TDJA"), Tex. Civ. Prac. & Rem.Code § 37.004. Specifically, Hellas requests determinations "as to whether Dixon may comply with the Hellas Agreement without violating the terms of the Beynon Agreement, and whether Dixon may perform any services requested by Hellas in states that are not within the Restricted Territory." Dkt. No. 2-4 at ¶ 15.

While Hellas has brought this claim under the TDJA, the parties disagree as to whether the TDJA or the federal Declaratory Judgment Act ("FDJA") applies in this case. Ordinarily, when a party seeks relief pursuant to the TDJA and the case is removed to federal court, the right to relief is converted to one under the FDJA. *See Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 687 (2018). While this is the general rule, courts have found that "where the question is improper joinder, the Court asks whether there is a reasonable basis for predicting that *state law* might impose liability against any non-diverse defendants," and in such cases courts will "analyze the claim under the Texas Declaratory Judgment Act." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 709 n.4 (N.D. Tex. 2011); *see also McCurdy v. Mortg. Elec. Registration Sys.*, 605 F. App'x 455 (5th Cir. 2015) ("But when a federal court possesses diversity jurisdiction, it may consider a state-law declaratory judgment claim, so long as that claim presents a justiciable controversy."); *Ondova Co. v. Manila Indus.*, 513 F. Supp. 2d 762, 776 n.12 (N.D. Tex. 2007) ("[B]ecause the question is improper joinder, the court must analyze the [declaratory judgment] claim under Texas rather than federal law."). Thus, it appears that the Court should analyze the claim under the TDJA. Whether the Court analyzes the declaratory

judgment claim under the FDJA or the TDJA, however, the claim nevertheless fails because it does not present a justiciable controversy.

"Both Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory relief." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 400 (5th Cir. 2011). "A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quoting *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having *adverse* legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added). A party's interest is an adverse legal interest within the meaning of the Declaratory Judgment Act when it relates to "a case of actual controversy within [the court's] jurisdiction. This language merely recognizes that the case or controversy requirement of Art. III of the Constitution applies in the declaratory judgment context." *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (quoting 28 U.S.C. § 2201).

Hellas' lawsuit alleges a sole claim under the TDJA against Dixon that "requests determinations as to whether Dixon may comply with the Hellas Agreement without violating the terms of the Beynon Agreement." Dkt. No. 2-4 at ¶ 15. Hellas's request for relief does not

involve an actual controversy with Dixon, but rather with Beynon. Hellas is anticipating that Beynon will file a lawsuit against Hellas based on the employment contract between Dixon and Beynon. Hellas asserts no actual controversy between it and Dixon. Hellas and Dixon do not have *adverse* legal interests in this case. In fact, Dixon and Hellas have the same legal interest in this case: to permit Dixon to continue working for Hellas in whatever capacity is beneficial to both. As the Supreme Court has stated repeatedly, in order for a controversy to be justiciable, it must be "between parties having adverse legal interests." *Maryland*, 312 U.S. at 273; *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."); *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) ("A federal court may not issue a declaratory judgment unless there exists an "actual controversy," i.e., there must be a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests.") (emphasis added). Because Hellas and Dixon are not adverse parties, Hellas has failed to state a plausible claim for declaratory relief against Dixon.

Hellas' claim for declaratory relief also fails because it has failed to allege an underlying cause of action against Dixon. The TDJA and FDJA are merely procedural devices that do not create any substantive rights or causes of action. *Haworth*, 300 U.S. at 240; *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). As the Fifth Circuit has explained:

> The Declaratory Judgment Act is remedial only. It enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. A party's legal interest must relate to an actual claim arising under federal law that another asserts against him. Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment

> action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.

*Collin Cty.*, 915 F.2d at 170–71 (internal quotations and citations omitted). Thus, a plaintiff "must establish a substantive underlying claim in order for the Court to award declaratory or injunctive relief." *Castle Mortg. Corp. v. GMAC Mortg., LLC*, 2013 WL 5299298, at *4 (N.D. Tex. Sept. 20, 2013); *see also Conrad v. SIB Mortg. Corp.*, 2015 WL 1026159, at *7 (N.D. Tex. March 6, 2015) ("A declaratory judgment action requires the parties to litigate some underlying claim or cause of action."). If a plaintiff has no underlying claim, the request for declaratory relief has no merit and fails to state a claim. *Wheeler v. U.S. Bank Nat'l Ass'n*, 2016 WL 554846, at *8 n.53 (S.D. Tex. Feb. 10, 2016). Because Hellas has failed to allege an underlying claim against Dixon, Hellas' claim for declaratory relief fails to state a plausible claim for relief. Accordingly, Beynon has sustained its burden to show that Dixon was improperly joined in this case.

"When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (emphasis in original). Therefore, the Court will recommend that Dixon be dismissed from this lawsuit without prejudice.

**B.  Amount in Controversy**

Hellas also argues that this case should be remanded to state court because Beynon has failed to show that the declaratory relief sought in this case will exceed $75,000. Hellas' Petition does not assert a claim for monetary damages. However, Hellas does seek "reasonable and necessary attorneys' fees" in this case. Dkt. No. 2-4 at ¶ 16.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adv. Comm'n*, 432 U.S. 333, 346–47 (1977). "[T]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). As the Fifth Circuit has acknowledged, it has not been "overly difficult in the past for federal courts to find the requisite jurisdictional amount in actions brought to enforce covenants not to compete." *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 446 (5th Cir. 1971).

The value of the right to be protected in this case for Hellas is the ability of Dixon to continue to work as the "Director of Sports/E‑‑Learning Development" for Hellas. Dkt. 2-4 at ¶ 11. In fact, Hellas' Petition acknowledges this: "If Dixon's duties with Hellas are in violation of the Beynon Agreement, Dixon will be unable to fulfill his duties and comply with the Hellas Agreement, and will be in breach of the Hellas Agreeement." *Id.* at ¶ 12. Hellas acknowledges that it pays Dixon an annual salary of $175,000. Dkt. No 12 at p. 4. Hellas also admits that "[s]eemingly, Dixon is providing value over and above the approximately $175,000 that he is being paid." *Id.* The Court finds that Hellas' admissions demonstrate that the amount in controversy in this case is above $75,000. Accordingly, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, and Hellas' Motion to Remand should be denied.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Remand (Dkt. No. 7). The undersigned **FURTHER RECOMMENDS** that the District Court **DISMISS** without prejudice Defendant Jeffrey Dixon from this lawsuit on the basis of improper joinder.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** this 6th day of September, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE